IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

Cincinnati Insurance Company

      Plaintiff,

v.

THE CHARTER OAK FIRE INSURANCE COMPANY;
MCWHINNEY HOLDING COMPANY, LLLP, a
Colorado Limited Liability Limited Partnership;
MCWHINNEY CENTERRA LIFESTYLE CENTER, LLC,
a Colorado Limited Liability Company;
CENTERRA PROPERTIES WEST, LLC, a
Colorado Limited Liability Company and SMP4
INVESTMENTS, INC., a Colorado Corporation.

      Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Cincinnati Insurance Company, through its attorneys, Walberg Allan, P.L.L.C., submits this Complaint for Declaratory Relief in this matter as follows:

This is an action for declaratory relief brought pursuant to the provisions of Rule 57 of the Federal Rules of Civil Procedure.

### THE PARTIES

1.    Plaintiff Cincinnati Insurance Company (CIC) is a citizen of Ohio, with its principal place of business in Ohio.  CIC is licensed to do business in the State of Colorado as an insurance company.

-1-

2.     The Charter Oak Fire Insurance Company, upon information and belief, is domiciled in Hartford, Connecticut, and is authorized to do business in the State of Colorado.

3.     McWhinney Holding Company (McWhinney) is a limited liability limited partnership in good standing.  McWhinney was organized and exists under and by virtue of the laws of the State of Colorado.

4.     McWhinney Centerra Lifestyle Center, LLC (MCLC) is a limited liability company in good standing.  MCLC was organized and exists under and by virtue of the laws of the State of Colorado.

5.     Centerra Properties West, LLC (CPW) is a limited liability company in good standing. CPW was organized and exists under and by virtue of the laws of the State of Colorado.

6.     SMP4 Investments, Inc. (SMP4) was organized and exists under and by virtue of the laws of the state of Colorado.

**JURISDICTION AND VENUE**

7.     This Court has proper subject matter jurisdiction.

8.     The amount in controversy in this action, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00).

9.     Jurisdiction in this matter is based upon diversity of citizenship under 28 U.S.C. §1332.

10.    Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to the claim occurred primarily in Colorado, the insurance policy in question was issued in Colorado, to Colorado resident companies, and the property concerned in the events giving rise to this Complaint is in Colorado.

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

11.    CIC seeks to secure relief from uncertainty and insecurity regarding the rights, status, and legal obligations of the parties hereto concerning whether CIC has any defense or insurance indemnification obligations under policies of insurance CIC issued to McWhinney Real Estate Services, Inc. and naming McWhinney Holding Company, LLLP, McWhinney Centerra Lifestyle Center, LLC, Centerra Properties West, LLC, and SMP4 Investments, Inc., as additional named insureds. These parties are referred to hereafter as the "McWhinney Defendants".

12.    The McWhinney Defendants are the counterclaim defendants in the lawsuit styled *McWhinney Holding Company, LLP, et al v. Poag & McEwen Lifestyle Centers – Centerra, LLC, et al.*, Case No. 2011CV1104, currently pending in the Larimer County District Court for the State of Colorado. (The Underlying Action)

13.    All named defendants have claims or interests that will be affected by the declarations sought in this case.

14.    CIC has no adequate remedy at law and, therefore, requests that this Court terminate the uncertainty and controversy giving rise to this proceeding.

15.    The McWhinney Defendants have an interest in the outcome of this lawsuit, as they were named as counterclaim defendants in the Underlying Action, and they have all made, or will make in the future, claims against CIC for insurance coverage, including but not limited to defense of and indemnification for those claims.

16.     Defendant Charter Oak Fire Insurance Company may have obligations to the McWhinney defendants for defense or indemnification in the Underlying Action which will be increased if this court determines that CIC has no duty of defense or indemnification.

17.     Defendant Charter Oak Fire Insurance Company may have obligations to repay defense costs to CIC if this Court determines that CIC has no duty of defense or indemnification.

18.     On July 1, 2010, CIC issued a Commercial General Liability (CGL) policy (No.  CPP 107 39 86) to McWhinney Real Estate Services as the named insured for a period of one year. (Exhibit A, CGL Policy)

19.     The CGL policy was renewed the following year for the period to and including July 1, 2012.   (Exhibit B, CGL Policy – Renewal)

20.     The CGL policy was in place at the time counterclaims were filed against the McWhinney Defendants in the Underlying Action on or about January 12, 2012.  (Exhibit C, The Underlying Action Counterclaims)

21.     CIC issued McWhinney Real Estate Services, Inc. a Commercial Umbrella Liability (CUL) policy (No.  CPP 107 39 86) with an effective date of July 1, 2010.  The CUL policy includes the McWhinney Defendants as additional "named insureds" (Exhibit D, CUL policy)

22.     CIC renewed the CUL policy on July 1, 2011 for a period of one year.  (Exhibit E, CUL Policy – renewal)

23.     At the time of the Counterclaims were filed and during the period of the CGL and CUL coverage provided by CIC, CIC's policies carried Named Insured Schedules listing the McWhinney Defendants as insured under the policy. (Exhibit F, Named Insured Schedules)

24.     The Counterclaims against the McWhinney Defendants assert:

a.      McWhinney Holding Company, LLLP is the sole owner of MCLC.

b.      MCLC and Poag & McEwen Lifestyle Centers – Centerra, LLC (P&M) formed an entity known as Centerra Lifestyle Centers, LLC (Centerra) for the purpose of developing and operating a shopping center called the Promenade Shops.

c.      Centerra entered into a Construction Loan Agreement for $116,000,000 (One Hundred and Sixteen Million Dollars), with a group of lenders including JP Morgan Chase, secured by a deed of trust on the Promenade Shops.

d.      The construction loan matured on January 23, 2009, and went into default.

e.      P&M sought to replace the construction loan with permanent financing, but was unable to do so prior to the maturity date.

f.      After the maturity date, and in part due to the 2008 economic downturn, P&M was still unable to obtain permanent financing, or to otherwise resolve the default of the construction loan.

g.      MCLC unreasonably withheld consent to the terms of a permanent loan.

h.      In 2009, MCLC initially proposed a contribution of $9,000,000 (Nine Million Dollars) to pay down the construction loan in return for a 3 year extension, but then backed out of the deal.

i.      MCLC failed and refused in 2009 to work with P&M to secure an extension of the construction loan, and/or to work in good faith with P&M to secure permanent financing and avoid foreclosure of the construction loan.

j.      On or before August 17, 2009, MCLC accused P&M of acting in bad faith and communicated these accusations to JP Morgan Chase Bank and Key Bank.

k.      On or before August 17, 2009, MCLC insisted P&M pay the entire $9,000,000 (Nine Million Dollars) necessary to obtain permanent loan refinancing.

l.      MCLC threatened P&M and eventually sued P&M over unsupported accusations related to a $40,000,000 (Forty Million Dollar) mezzanine loan obtained by an affiliate of P&M.

m.      MCLC obstructed the ability of P&M to enter into a permanent loan by misstating lenders' requirements for permanent loan.

n.      MCLC claimed there were "lender requirements" established by potential lenders, such that these lenders would not enter into a permanent loan until "certain partnership issues" were resolved; "partnership issues" created by false and unfounded accusations made by MCLC and communicated to the lenders.

o.      MCLC used this purported lender requirement to insist that P&M agree to unreasonable and unfair terms to resolve the fabricated "partnership issues."

p.      MCLC made unreasonable and unfair demands in order to minimize its responsibility to Centerra and P&M, so it and its parent company, McWhinney, could develop a competing shopping center on adjacent property or otherwise get out of the joint venture with P&M and PMLC.

q.      MCLC and McWhinney hindered, delayed, undermined and intentionally interfered with P&M's efforts to obtain permanent loan financing.

r.      MCLC and McWhinney wanted to compete with Centerra by developing an adjacent retail center known as Grand Station.

-6-

s.  To further their goal of competing, MCLC and McWhinney acted, in bad faith, to prevent refinancing of the construction loan by various means.

t.  MCLC and McWhinney took inconsistent and contrary positions to further its goals of squeezing out P&M, and obtaining the Promenade Shops property by purchasing it out of foreclosure.

24.  The Counterclaims in the Underlying Action set forth four claims for relief against the McWhinney Defendants.

25.  The First Counterclaim is described as a claim for breach of contract claim against MCLC alleging:

a.  A contract was entered into between P&M and MCLC which included a duty to act in good faith and deal fairly.

b.  MCLC violated the contract by failing to respond to a capital call.

c.  MCLC violated the contract by hampering P&M's efforts to obtain permanent financing.

d.  MCLC damaged P&M's credibility with the construction loan lenders.

e.  MCLC filed unsupported and false claims against P&M, requiring P&M to expend funds to defend itself in violation of the terms of the operating agreement.

26.  The Second Counterclaim is described as a breach of contract claim against MCLC and McWhinney alleging:

a.  MCLC and McWhinney breached the covenant of good faith and fair dealing by the actions referenced in the Counterclaim.

-7-

      b.     MCLC and McWhinney breached the covenant of good faith and fair dealing by undermining and interfering with P&M's efforts to obtain a permanent loan and making false accusations against P&M and PMLC, manufacturing a partnership dispute to further their own agenda and filing false and unsupported claims against P&M and PMLC.

27.    The Third Counterclaim is described as a breach of fiduciary duty against MCLC and McWhinney alleging:

      a.     MCLC and McWhinney owed fiduciary duties to P&M and PMLC

      b.     MCLC and McWhinney breached these duties by the actions complained of.

28.    The Fourth Counterclaim is described as a claim for Abuse of Process against all McWhinney Defendants, alleging:

      a.     On September 23, 2009, while P&M and MCLC were in negotiations for refinancing of the construction loan, MCLC filed a Complaint in Arbitration against P&M making unsupported and false claims of breach of contract, breach of fiduciary duty and fraud relating to efforts to obtain a permanent loan and regarding the mezzanine loan.

      b.     The filing of the arbitration was not for a proper purpose, but instead was motivated by an ulterior purpose of manufacturing a partnership dispute that would hold up refinancing and force P&M to assent to MCLC's unfair demands as described in the Counterclaims.

      c.     The arbitration proceedings were also motivated, not by a legitimate dispute and claim, but instead by the desire to terminate the partnership between P&M, PMLC, MCLC and McWhinney so that MCLC and McWhinney and its related entities, could develop a competing shopping center on adjacent property.

d.      The arbitration proceedings were also motivated by a desire to terminate the partnership so that MCLC, McWhinney and its related entities could purchase the Centerra property out of foreclosure.

e.      The arbitration proceedings lacked merit.

f.      After voluntarily dismissing the arbitration proceedings without resolution, the McWhinney Defendants refiled the same meritless claims and added other unsupported claims against P&M, and also against PMLC and Poag, an entity not in existence until after the events complained of. (The Underlying Action)

g.      The claims in the Underlying Action also lack merit.

h.      The claims in the Underlying Action were filed for an ulterior purpose of terminating the partnership between P&M, PMLC, MCLC and McWhinney so that MCLC and McWhinney, and its related entities could develop a competing shopping center.

i.      The claims in the Underlying Action were filed for the ulterior purpose of terminating the partnership so that MCLC and McWhinney, and its related entities, could purchase the Centerra property out of foreclosure

j.      The claims filed in the Underlying Action were also filed for the ulterior purpose of finding alternative funding to repay a $12,000,000 (Twelve Million Dollar) loan made between the McWhinney Defendants.

k.      The arbitration proceeding and the Underlying Action are being willfully used for an improper purpose and not the usual and regular course of a legal proceeding.

l.      P&M, PMLC and Poag are therefore entitled to entry of judgement against the McWhinney Defendants jointly and severally, for all damages and losses sustained as a result of their abuse of process.

29.    The Promenade Shops/Centerra property in question was sold at foreclosure on June 30, 2010, due to the failure of the parties to obtain permanent financing or further extension

30.    There is a dispute among the parties as to whether the any of the claims stated against the McWhinney Defendants are or could be within the coverage of the CIC policies, so as to trigger an obligation of defense for Counterclaims asserted against the McWhinney Defendants in the Underlying Action.

31.    Because the Underlying Action includes a claim labeled "Abuse of Process" Cincinnati is sharing the cost of defending the McWhinney Defendants in the Underlying action with The Charter Oak Fire Insurance Company.

32.    CIC has incurred costs in defense of The McWhinney Defendants in the Underlying Action.

33.    The Counterclaims in the underlying action do not state a claim for Abuse of Process within the coverage of CIC's policies.

34.    The remaining allegations of in the Counterclaims against the McWhinney defendants do not state claims potentially within the coverage of CIC's policies.

## FIRST CLAIM FOR DECLARATORY RELIEF

(The Underlying Action does not state any claim for Bodily Injury
or Property damage within the coverage of the CIC CGL policies)

35.    CIC incorporates paragraphs 1 through 34 above.

-10-

36.     Exhibits A and B, the CGL policies, provide in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.       Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    b.     This insurance applies to "bodily injury" and "property damage" only if:

        (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period' and

        (3)     Prior to the "coverage term" in which the "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

    ******

**SECTION V – DEFINITIONS**

**4.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**16.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**20.**    "Property damage" means:

    **a.**     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

37.    The Counterclaims in the Underlying Action do not assert claims for Bodily Injury or Property Damage arising out of an Occurrence during the policy period, within the definitions of the CGL policies.

38.    CIC has no obligation to defend the McWhinney Defendants under the "bodily injury" and "property damage" coverage of the CGL policies for any claims stated in the Counterclaims asserted in the Underlying Action.

## SECOND CLAIM FOR DECLARATORY RELIEF

(The Underlying Action does not state any claim for Personal or Advertising Injury within the coverage of the CIC CGL policies)

39.    CIC incorporates paragraphs 1 through 38 above.

40.    Exhibits A and B, the CGL policies, provide in relevant part:

**COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.        Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may at our discretion, investigate any offense and settle any claim or "suit" that may result.

**b.**    This insurance applies to "personal and advertising injury" only if:

**(1)**    The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)**    The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)**    Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

-12-

    **c.**     "Personal and advertising injury" caused by an offense which:

        **(1)**    Was committed during the "coverage term"; and

        **(2)**    Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

        includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

    **d.**     You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

        **(1)**    Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

        **(2)**    Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

        **(3)**    First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

        **(4)**    Becomes aware, or reasonably should have become aware, by any means, other than as described in (3) above, that the offense had been committed or had begun to be committed; or

        **(5)**    Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

## SECTION V – DEFINITIONS

**17.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**     False arrest, detention or imprisonment;

    **b.**     Malicious prosecution;

    **c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room …

    **d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization ….

    **e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.**      The use of another's advertising idea in your "advertisement"; or

**g.**      Infringing upon another's copyright, ….

41.      Colorado law also holds that when an insured contracts with an insurer to defend it against a specified legal claim, the claim is defined in legal rather than in lay terms.

42.      Where the Complaint does not allege a required element of a claim, the insurer is not required to provide a defense. *Thompson v. Maryland Cas. Co.,* 84 P.3d 496 (Colo. 2004).

43.      The Counterclaims in the Underlying Action do not assert claims for "False arrest, detention or imprisonment", "Malicious prosecution"; "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room"; "Oral or written publication, in any manner, of material that violates a person's right of privacy"; "The use of another's advertising idea"; "Infringing upon another's copyright" or "Discrimination".

44.      Certain facts set forth in the Counterclaims in the Underlying Action allege that the McWhinney Defendants communicated false accusations about the Poag entities to J.P.Morgan and Key Bank.

45.      The elements of a legal claim for slander or libel require the allegation of damages.

46.      The Counterclaims in the Underlying Action do not seek damages as a direct consequence of these alleged false accusations.

47.      All allegations in the Counterclaims describing false accusations made by the McWhinney Defendants are alleged to have prevented the Counterclaim Plaintiffs from obtaining permanent financing, resulting in foreclosure sale of the Promenade Shops property.

48.      The Promenade Shops property was sold at foreclosure on June 30, 2010.

49.     The foreclosure sale occurred prior to CIC's policy inception of July 1, 2010.

50.     CIC's policy provides coverage only for personal and advertising injury claims which are caused by an offense that takes place during the policy period shown in the declarations.

51.     The Counterclaims do not set forth facts sufficient to sustain a claim an offense of defamation or slander against the McWhinney Defendants which occurred during the period of CIC's policy.

52.     CIC has no obligation to defend the McWhinney Defendants under the "personal and advertising injury" coverage of the CGL policies for any claims stated in the Counterclaims asserted in the Underlying Action.

## THIRD CLAIM FOR DECLARATORY RELIEF

(The Underlying Action does not state any claim for relief
within the coverage of the CIC Commercial Umbrella Liability (CUL) policies)

53.     CIC incorporates paragraphs 1 through 52 above.

54.     Exhibits D and E, the CUL policies, provide in relevant part:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM**

**SECTION I – COVERAGE**

**A.      Insuring Agreement**

**1.**     We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

**a.**     Which is in excess of the "underlying insurance"; or

**b.**     Which is either excluded or not insured by "underlying insurance".

**2.**     This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

      **a.**     The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      **c.**     The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations; and

      **d.**     Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph **5.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or that the "personal and advertising injury" offense had been committed or had begun to be committed, in whole or part.

**4.**     "Personal and advertising injury" caused by an offense which:

      **a.**     Was committed during the "coverage term"; and

      **b.**     Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have been committed;

includes any continuation, change or resumption of that "personal and advertising injury" offense after the end of the "coverage term" in which it first became knows by you.

**5.**     You will be deemed to know that "bodily injury" or "property damage" has occurred, or that a "personal and advertising" offense has been committed at the earliest time when any "authorized representative":

      **a.**     Reports all, or any part, of the "bodily injury", "personal and advertising injury" or "property damage" to us or any other insurer;

      **b.**     Received a written or verbal demand or claim for damages because of the "bodily injury", "personal and advertising injury" or "property damage'"

      **c.**     First observes, or reasonably should have observed the "bodily injury" or "property damage", or the offense that caused the "personal and advertising injury'"

      **d.**     Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that "bodily injury" or "property damage" had occurred or had begun to occur, or that the "personal and advertising injury" offense had been committed or had begun to be committed; or

      **e.**      Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury", "personal and advertising injury" or "property damage" is substantially certain to occur.

**C.**      **Defense and Supplementary Payments**

      **1.**      We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result when:

            **a.**      The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

            **b.**      Damages are sought for "bodily injury", "personal and advertising injury" or "property damage" which are not covered by "underlying insurance" or other insurance.

      **2.**      Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

      **3.**      We have no duty to investigate, settle or defend any claim or "suit" other than those circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or "suit" to which this insurance applies. If we exercise this right, we will do so at our expense.

**SECTION V – DEFINITIONS**

**16.**      "Occurrence" means:

      **b.**      An offense that results in "personal and advertising injury".

      All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

            **(1)**      The frequency of repetition;

            **(2)**      The number or kind of media used; or

            **(3)**      The number of claimants.

**17.** "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** Abuse of process;

    **d.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room …

    **e.** Defamation of character ….

    **f.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **g.** The use of another's advertising idea ….

    **h.** Infringing upon another's copyright ….

    **i.** Discrimination, unless insurance coverage therefore is prohibited by law or statute.

55.    The Counterclaims in the Underlying Action do not assert claims for "bodily injury" or "property damage" as those terms are defined in CIC's CUL policies.

56.    Colorado law also holds that when an insured contracts with an insurer to defend it against a specified legal claim, the claim is defined in legal rather than in lay terms. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496 (Colo.2004).

57.    Where the Complaint does not allege a required element of a claim, the insurer is not required to provide a defense. *Thompson v. Maryland Cas. Co.*, 84 P.3d 496 (Colo.2004).

58.    The Counterclaims in the Underlying Action do not assert claims for "False arrest, detention or imprisonment", "Malicious prosecution"; "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room"; "Oral or written publication,

in any manner, of material that violates a person's right of privacy"; "The use of another's advertising idea"; "Infringing upon another's copyright" or "Discrimination".

59.    The Counterclaims in the Underlying Action do not assert a claim for "Defamation of Character" which occurred, or potentially occurred during CIC's policy term, which began on July 1, 2010.

60.    The elements of a legal claim for Abuse of Process are:

    a.    An ulterior purpose for the use of judicial process;

    b.    Willful action in the use of that process which is not proper in the regular course of the proceedings, that is, use of a legal proceeding in an improper manner; and

    c.    Resulting damage. *Walker v. Van Laningham,* 148 P.3d 391, 394 (Colo.App. 2006).

61.    Abuse of process lies where a party invokes legal proceedings not for their intended purpose, but in an effort to obtain collateral results that would not be available by the normal operation of such proceedings.

62.    Abuse of Process lies where the process is used as a form of extortion, as a threat or club in relation to negotiation, rather than the issuance or any formal use of the process itself. *Hertz v. Luzenac Group,* 576 F.3d 1103, 1117 -1118 (10th Cir. 2009).

63.    Abuse of Process lies only where the legal proceeding is used in an improper manner, for example, to accomplish a coercive goal. The improper purpose is ordinarily an attempt to secure from another some collateral advantage not properly includable in the process itself and is a form of extortion in which a lawfully used process is perverted to an unlawful use. *Walker v. Van Laningham*, 148 P.3d 391 (Colo.App. 2006)

64.    An Abuse of Process claim must allege some definite act or threat not recognized by the process, or aimed at an objective not legitimate in the use of the process.

65.    There is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. *Mintz v. Accident and Injury Medical Specialists*, PC, 284 P.3d 62 (Colo.App. 2010)

66.    The Counterclaims in the Underlying Action assert that the McWhinney Defendants filed a false and unfounded arbitration in September of 2009 for improper purposes including manufacturing a partnership dispute that would force P&M to assent to MCLC's unfair demands in relation to the partnership agreement.

67.    The Counterclaims in the Underlying Action assert that the McWhinney Defendants filed a false and unfounded arbitration in September of 2009 for improper purpose of terminating the partnership so that McWhinney could purchase the Promenade Shops/Centerra property out of foreclosure.

68.    The Promenade Shops / Centerra property was sold at foreclosure on June 30, 2010.

69.    The Promenade Shops / Centerra property is alleged to have been the sole asset of the "partnership" and the sole subject of the "partnership agreement".

70.    The Counterclaims in the Underlying Action allege that the filing of this lawsuit was a continuation of the abuse of process begun with the filing of the arbitration.

71.    CIC's CUL policy extends coverage for "personal and advertising injury" only if, prior to the coverage term, the insured did not know that the "personal and advertising injury" offense had been committed or begun to be committed, in whole or in part.

72.    The McWhinney Defendants actions alleged to have constituted 'abuse of process' began to occur prior to the CIC policy coverage term.

73.    All McWhinney Defendants are alleged to have 'joint and several' liability for such claims.

74.    All McWhinney Defendants are alleged to have acted in concert, or as alter-egos of each other in relation to the abuse of process claims.

75.    All McWhinney Defendants are, in fact, alter-egos of each other in relation to the events described in the Underlying Action.

76.    The Counterclaims in the Underlying Action do not allege facts sufficient to state a claim for relief for abuse of process in the filing of the litigation, as there is no allegation of fact sufficient to state that such litigation was filed for an "improper purpose" as that term has been construed by Colorado Courts.

77.    The Counterclaims in the Underlying Action do not contain allegations of fact sufficient to establish a legal claim for "Abuse of Process" which occurred during CIC's policy term.

78.    CIC has no obligation to defend the McWhinney Defendants under the "Bodily injury, "property damage" or "personal and advertising injury" coverage of the CUL policies for any claims stated in the Counterclaims asserted in The Underlying Action.

### FOURTH CLAIM FOR DECLARATORY RELIEF

(Counterclaims Asserted In The Underlying Action Are Excluded From Coverage Under Additional Terms Of The CGL Policy)

79.    CIC incorporates paragraphs 1 through 78 above.

80.    Exhibits A and B, the CGL policies, provide the following additional terms and exclusions pertaining to claims for "bodily injury" or "property damage":

**2.      Exclusions**

This insurance does not apply to:

**a.      Expected or Intended Injury**

> "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.      Contractual Liability**

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

> **(1)**      That the insured would have in the absence of the contract or agreement;

81.    The CGL exclusion in the "bodily injury" and "property damage" coverage for Expected or Intended Injury precludes coverage from extending to all or part of the claimed damages.

82.    The CGL exclusion in the "bodily injury" and "property damage" coverage for Contractual Liability precludes coverage from extending to all or part of the claimed damages.

83.    Exhibits A and B, the CGL policies, provides the following additional terms and exclusions pertaining to claims for "personal and advertising injury":

**2.      Exclusions**

This insurance does not apply to:

**a.      Knowing Violation of Rights of Another**

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**e.      Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)**    That the insured would have in the absence of the contract or agreement; or

**(2)**    Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement.  When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract".  Such defense payments will not reduce the limits of insurance.

**f.    Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

84.    The CGL exclusion in the "personal and advertising injury" coverage for "Knowing Violation of Rights of Another" precludes coverage from extending to all or part of the claimed damages.

85.    The CGL exclusion in the "personal and advertising injury" coverage for Contractual Liability and Breach of Contact exclusions precludes coverage from extending to all or part of the claimed damages.

86.    CIC has no obligation to defend the McWhinney Defendants under the CGL policies for any claims stated in the Counterclaims asserted in the Underlying Action as a result of the application of one or more of the stated policy exclusions.

**FIFTH CLAIM FOR DECLARATORY RELIEF**

(Counterclaims Asserted In The Underlying Action Are Excluded From Coverage Under Additional Terms Of The CUL Policy)

-23-

87.     CIC incorporates paragraphs 1 through 86 above.

88.     Exhibits D and E, the CUL policies, provide the following additional terms and exclusions:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE**

**SECTION I - COVERAGE**

**B.     Exclusions**

This insurance does not apply to:

**2.     Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**

"Personal and Advertising injury":

**a.**     Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

* * *

**d.**     Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**3.     Contractual Liability**

Any liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for "bodily injury", "personal and advertising injury" or "property damage":

**a.**     That the insured would have in the absence of the contract or agreement; or

**b.**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury", "personal and advertising injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**14.     Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses**

"Personal and advertising injury"

**a.** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its fasity;

**b.** Arising out of the oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought;

89.  The CUL policies' Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights exclusion precludes coverage from extending to all or part of the Counterclaims asserted in The Underling Action.

90.  The CUL policies' Contractual Liability exclusion precludes coverage from extending to all or part of the Counterclaims asserted in The Underling Action.

91.  The CUL policies' Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses exclusion precludes coverage from extending to all or part of the Counterclaims asserted in the Underling Action.

92.  Pursuant to the terms and exclusions of the CUL policies, CIC has no obligation to indemnify the McWhinney Defendants for all or part of the damages they have or may in the future incur as a result of the Counterclaims asserted in the Underling Action.

## SIXTH CLAIM FOR DECLARATORY RELIEF

### (Recovery of Defense Costs)

93.  CIC incorporates paragraphs 1 through 92 above.

94.  CIC has participated in the defense of the McWhinney Defendants against the Counterclaims asserted in The Underlying Action.

95.    CIC properly reserved its rights at the time of its agreement to participate in the defense of the McWhinney Defendants, including its right to recovery of attorney fees in the event it was determined that the Counterclaims did not establish claims for which coverage is provided under CIC policies.

96.    CIC has incurred fees and costs in the defense of the McWhinney Defendants in The Underlying Action.

97.    The facts asserted in support of the Counterclaims in the Underlying Action are insufficient to state claims which are potentially within the coverage of CIC's policies issued to the McWhinney Defendants.

98.    CIC is entitled to a declaration that no coverage extends, and therefore that it is not obligated to continue its defense of the McWhinney Defendants.

99.    CIC is further entitled to recover those fees and costs incurred and paid in the defense of the Counterclaims asserted against the McWhinney Defendants.

**SEVENTH CLAIM FOR DECLARATORY RELIEF**

(Allocation of Covered Damages)

100.    CIC incorporates paragraphs 1 through 99 above.

101.    In the event this court determines that CIC retains a duty to defend the McWhinney Defendants, CIC has no means to obtain a determination in the Underlying Action as to the allocation by a jury of the damages which are or will be allocated to potentially covered claims.

102.    In the event this court determines that CIC retains the duty to defend the McWhinney Defendants in the Underlying Action, CIC requests that this Court retain jurisdiction pending

resolution of that matter to determine whether any damages which may be awarded by a jury are or were within the coverage of any CIC policy.

WHEREFORE, Cincinnati Insurance Company prays for the following declarations:

1.      That it has no obligation to indemnify the McWhinney Defendants for damages claimed in the Counterclaims in the Underlying Action styled: *McWhinney Holding Company, LLP, et al v. Poag & McEwen Lifestyle Centers – Centerra, LLC, et al.*, Case No. 2011CV1104, currently pending in the Larimer County District Court for the State of Colorado;

2.      For a declaration that it may withdraw its participation in the defense of the McWhinney Defendants;

3.      For a declaration that it entitled to recovery of its attorney fees and defense costs;

4.      For judgment against the McWhinney Defendants and/or The Charter Oak Insurance Company for the amount of fees and defense costs incurred through the date of the withdrawal of defense.

5.      In the alternative, for this Court to retain jurisdiction over the parties for the purpose of determining whether any damages awarded by a jury in the underlying action are covered under CIC's policy, and if no covered damages are awarded by the jury, for an order of this court that CIC is entitled reimbursement of fees expended under *Hecla Mining Co. v. N.H. Ins. Co.,* 811 P.2d 1083, 1089 (Colo. 1991).

DATED:  February 29, 2016

Respectfully submitted,

By:  *s/ Wendelyn K Walberg*
Wendelyn K Walberg
Kristin A. Allan
WALBERG, ALLAN, PLLC

-27-

8547 E. Arapahoe Road, J-248
Centennial, CO 80112
Phone:  (720) 536-5699
E-mail: wwalberg@walbergallan.com
*Attorneys for Cincinnati Insurance Company*